1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9
AT SEATTLE

10    | LOCALS 302 AND 612 OF THE | Case No. 09-cv-1779-JPD
      | INTERNATIONAL UNION OF |
11    | OPERATING ENGINEERS | ORDER GRANTING PLAINTIFFS'
      | CONSTRUCTION INDUSTRY HEALTH | MOTION FOR PARTIAL
12    | AND SECURITY FUND, et al., | SUMMARY JUDGMENT

13
                          Plaintiffs,
14
                 v.
15
      NELSON E. GILL, a sole proprietor, d/b/a
16    Nelson Construction,

17
                          Defendant.
18

19

20            I.        INTRODUCTION AND SUMMARY CONCLUSION

21            Plaintiffs, Local 302 of the International Union of Operating Engineers and three

22    Operating Engineers trust funds, bring this action to compel defendant, Nelson E. Gill, to

23    submit to an audit by furnishing certain employee payroll records and information.  This matter

24    comes before the Court upon plaintiffs' motion for partial summary judgment.  Dkt. 11.

25    Defendant opposes the motion.  Dkt. 18; Dkt. 19.  After careful consideration of plaintiffs'

26

ORDER
PAGE - 1

1
2
3

motion, defendant's opposition, plaintiffs' reply, and the balance of the record, the Court

GRANTS plaintiffs' motion for partial summary judgment.  The Court also GRANTS

plaintiffs' request for attorney's fees and costs in the amount of $3,520.04.

4

II.        BACKGROUND

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

The relevant facts of this case, as set forth by plaintiffs' briefs and supporting

documents, are uncontroverted by defendant.  Plaintiff Operating Engineers trust funds (the

"Trust Funds") are employee benefit plans governed by § 302(c)(5) of the Labor Management

Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 ("ERISA").

*See* 29 U.S.C. § 186(c)(5); 29 U.S.C. § 1001 *et seq.,* as amended (1988).  The Trust Funds

provide medical, retirement, and training benefits to eligible employees.  *See* Dkt. 15 at 3

(Parmelee Decl.).  Specifically, plaintiff Trust Funds include the Locals 302 and 612 of the

International Union of Operating Engineers - Construction Industry Health and Security Fund,

the Locals 302 and 612 of the International Union of Operating Engineers - Employers

Construction Industry Retirement Fund, and the Western Washington Operating Engineers -

Employers Training Trust Fund.  *See id*. at 1-2.  Each Trust Fund was established by a written

trust agreement (the "Trust Agreements"), and is governed by a board of trustees (the

"Trustees").  *See id*. at 2.

20
21
22
23
24
25
26

Individual employers bound by a collective bargaining agreement with plaintiff Local

302 of the International Union of Operating Engineers ("Local 302"), the 2007-2010 Operating

Engineers Local 302 Master Labor Agreement (the "Master Labor Agreement"), are required

to report and contribute to the Trust Funds.  *See* Dkt. 15 at 3 (Parmelee Decl.).  Defendant

became bound to the Master Labor Agreement when he executed an Operating Engineers

Local 302 Compliance Agreement (the "Compliance Agreement") in April 2007.  *Id*., Ex. A at

ORDER
PAGE - 2

2.  Thus, by entering into the Compliance Agreement with Local 302, defendant agreed to promptly report and remit monthly contributions to the Trust Funds for each hour of compensation defendant pays to his eligible employees.  *See id*., Ex. B at 20-21.

The Compliance Agreement also incorporates the terms and conditions of the three Trust Agreements, and provides that defendant "consents to be bound by the actions and determinations of the Trustees."  *Id*., Ex. A at 1-2.  In addition to defining employers' obligations to report and contribute to the Trust Funds, the Trust Agreements establish broad audit rights for the Trustees in connection with their administration of the Trust Funds.  Specifically, the Trust Agreements contain nearly identical language providing that "[t]he Trustees, or their authorized representatives," may conduct an audit of the pertinent financial or payroll records of an employer "whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Fund[s]."  *Id*., Ex. C at 26; *id*., Ex. D at 22; *id*., Ex. E at 11.  Moreover, the Trustees "may require . . . any Individual Employer, the Union, any Employee or other beneficiary to promptly furnish to the Trustees, on demand, such payroll records, information, data, reports or documents reasonably required for the purposes of administration of the Fund."  *Id*.  Finally, the Trust Agreements provide that "[t]he parties agree that they will use their best efforts to secure compliance with any reasonable requests of the Board for any such information, data, reports, or documents."[1]  *Id*.

Defendant reported hours of work and remitted contributions to the Trust Funds for employees during the period August 2007 through March 2008, but did not report hours or remit contributions after that date.  *See* Dkt. 15 at 7 (Parmelee Decl.).  As a result, in 2009 the

---

[1] "Best efforts" is not expressly defined in the Compliance Agreement, Master Labor Agreement, or Trust Agreements.

ORDER
PAGE - 3

1
2
3
4

Trustees deemed it both necessary and advisable that their authorized representatives, accounting firm Lindquist LLP ("Lindquist"), examine defendant's records to determine if he previously reported and paid all contributions owed to the Trust Funds. *See id*.; Dkt. 12 at 2 (Hislop Decl.).

5
6
7
8
9
10
11
12
13

Pursuant to the Trustees' request, Lindquist sent defendant a letter dated August 7, 2009, asking defendant to schedule an appointment for the purpose of testing his contributions to the Trust Funds for the period of January 1, 2005, through the present. *See* Dkt. 12 at 3 (Hislop Decl.); *id*., Ex. A. The letter also asked defendant to furnish certain itemized payroll and tax records at the time of the audit. *See id*., Ex A. When defendant failed to schedule an appointment for the audit despite several messages from Lindquist and plaintiffs' counsel, plaintiffs initiated this lawsuit in December 2009 to compel defendant to submit to the audit. *See* Dkt. 1; Dkt. 13 at 2 (Reid Decl.); Dkt. 13, Ex. A.

14
15
16
17
18
19
20
21
22
23
24

In February 2010, defendant contacted Lindquist and scheduled an appointment for the audit. *See* Dkt. 12 at 3 (Hislop Decl.). When defendant consistently failed to respond to Lindquist's messages, however, the appointment was canceled. *See id*. In March and April 2010, defendant provided some payroll documents to Lindquist. *See id*. Upon review of these materials, Lindquist determined that the documents provided by defendant were inadequate to determine whether defendant had properly reported and contributed to the Trust Funds. *See id*. at 2-4. Specifically, Lindquist required several records that it had originally requested from defendant in August 2009. Accordingly, Lindquist emailed defendant on April 23, 2010, and asked him to furnish the following outstanding documents:

25
26

    (1)    Washington State Employment Securities Reports for the following quarters: 2007-3; 2007-4; 2008-1; 2008-2; 2008-3; 2008-4; 2010-1;

ORDER
PAGE - 4

1          (2)      Accounts payable legers (check registers) for 2009 and 2010; and

2          (3)      Payroll Registers.

3   *Id.*, Ex. B.  Lindquist also asked to speak with the person who manages defendant's

4   Quickbooks payroll registers to help retrieve acceptable payroll registers for the audit.  *Id.*

5          On May 5, 2010, defendant advised plaintiffs that he had already provided all the

6   documents and records he could access.  *See* Dkt. 13 at 2 (Reid Decl.); *id.*, Ex. B.  To date,

7   defendant has not furnished the outstanding documents or assisted Lindquist in retrieving

8   acceptable payroll registers for the audit.  *Id.* at 2 (Reid Decl.).

9

10         Plaintiffs have moved for partial summary judgment to compel defendant to submit to

11  the audit by promptly furnishing the outstanding documents and information requested by

12  Lindquist's April 23, 2010, email.  *See* Dkt. 11 at 16-17.  Plaintiffs argue that defendant is

13  obligated to use his "best efforts" to furnish the outstanding documents, and that "best efforts"

14  include subpoenaing the documents from third parties, if necessary.  Dkt. 20 at 2-3.  Plaintiffs

15  also assert that defendant's "best efforts" should include requesting the Employment Security

16  Reports from the state, if he does not have the reports in his possession.  *Id.* at 4.  Finally,

17  plaintiffs move the Court to award attorney's fees and costs in the amount of $3,520.04.  *See*

18  *id.* at 17-19; Dkt. 21 at 1-2 (Leahy Decl.).

19         Defendant opposes the motion for partial summary judgment on the grounds that Local

20  302 should bear the burden of furnishing the outstanding documents because it can obtain them

21  more easily.  *See* Dkt. 18 at 2-3 (Gill Aff.); Dkt. 19 at 2 (Cushman Aff.).  Specifically,

22  defendant explains that he had a falling out with his former bookkeeper, who performed all

23  accounting and payroll functions during the relevant time period, including reporting and

24  remitting contributions to the Trust Funds.  *See* Dkt. 18 at 2 (Gill Aff.).  According to

25

26

ORDER
PAGE - 5

defendant, the bookkeeper "has clearly indicated that no request by me, either informally or through a court, will result in my receiving the records directly." *Id*. Nevertheless, defendant believes "the bookkeeper would provide the records to the Union at the Union's independent request, and I have told the Union this and asked them to obtain the records that way." *Id*. Thus, defendant asserts that "[t]he Union is far more able to obtain the records than I am, and . . . I would give them any assistance it needs to obtain the records." *Id*. Similarly, defendant's counsel states that the outstanding documents "are most readily attainable if the Union, as opposed to Nelson Gill, subpoenas the documents from the bookkeeper." Dkt. 19 at 2 (Cushman Aff.).

Thus, defendant's sole contention is that the burden of furnishing the outstanding documents should fall on Local 302. *See* Dkt. 18 at 2-3 (Gill Aff.). In his affidavits, defendant does not appear to deny his duty to submit to the audit, or contend that Lindquist's request for the outstanding documents and information is an unreasonable request. *See* Dkt. 18 (Gill Aff.); Dkt. 19 (Cushman Aff.). Defendant does not address the issue of attorney's fees and costs. *Id*.

III.    JURISDICTION

The parties have consented to this matter proceeding before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Dkt. 6. The Court has exclusive jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f) (1974). Venue is proper because the Trust Funds are administered in this district. 29 U.S.C. § 1132(e)(2).

IV.    DISCUSSION

A.    *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such

ORDER
PAGE - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party."  *Id.*  In response to a summary judgment motion that is properly supported, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial, and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986).  A mere scintilla of evidence, however, is insufficient to create a factual dispute.  *See Anderson,* 477 U.S. at 252.  To defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630-32 (9th Cir. 1987).

B.       *Defendant Must Use His "Best Efforts" to Comply with the Trustees' Requests*

As discussed above, a trust for employee health or pension benefits is a contract governed by ERISA.  *See* 29 U.S.C. § 1001 *et seq.,* as amended.  ERISA requires that the assets of employee benefit plans be held in trust pursuant to a written trust agreement.  *Id.* at §§ 1102(a), 1103(a).  The language of a trust agreement defines the rights and obligations of the parties to the trust to the extent they are consistent with ERISA.  *Id.* at § 1145; *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.,* 920 F.2d 1491, 1493-94 (9th Cir. 1990) (internal citations omitted).

The U.S. Supreme Court has held that a trust agreement may provide trustees of an employee benefit plan with broad rights to audit employers' books and records, and that such

ORDER
PAGE - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

rights are consistent with ERISA.  *Central States Southeast and Southwest Areas Pension Fund v. Central Transport Inc.*, 472 U.S. 559, 571-74, 582-83 (1985) (*Central States II*); *Miramar Hotel Corp.,* 920 F.2d at 1494-95.  As a result, such audit rights are enforced in accordance with the terms of the trust agreement.  *See Central States II*, 472 U.S. at 568; *Miramar Hotel Corp.*, 920 F.2d at 1494-95.  Furthermore, in interpreting the terms of trust agreements, the U.S. Supreme Court and circuit authority have emphasized the independent relationship between a trust fund, an employer, and a union.  *Miramar Hotel Corp.,* 920 F.2d at 1494-95.  *See also Central States II*, 472 U.S. at 575-77 (holding that a trust fund need not rely on a union to monitor employer contributions); *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 370-76 (1984) (outlining the differing interests between a union, employer, and trust fund within the context of arbitration); *Hawkins v. Bennett*, 704 F.2d 1157, 1159 (9th Cir. 1983) ("The trust fund is independent of the collective bargaining agreement between the parties.").

    The plain language of the Trust Agreements grants the Trustees broad audit rights to ensure that employers like defendant have fulfilled their reporting and contribution obligations to the Trust Funds.  *See* Dkt. 15, Ex. C at 26; *id*., Ex. D at 22; *id*., Ex. E at 11.  These broad audit rights include the right to compel "any Individual Employer . . . to promptly furnish to the Trustees, on demand, such payroll records, information, data, reports or documents reasonably required for the purposes of administration of the Fund."  *Id*.  As discussed above, the Trustees' audit rights will be enforced.  The Trust Agreements also require defendant to "use [his] best efforts to secure compliance with any reasonable request . . . for any such information, data, reports, or documents."  *Id*.

ORDER
PAGE - 8

1
2
3
4
5
6
7
8
9
10
11

Defendant argues that Local 302 should furnish the outstanding documents, because Local 302 could likely obtain them "more easily" by requesting or subpoenaing them from his former bookkeeper.  Defendant's contention fails, however, because the Trust Agreements impose the burden of compliance solely on the party the Trustees direct to furnish the pertinent documents or information.  *See id.*  The Trust Agreements do not, as defendant argues, impose this burden on the party who can comply with the greatest ease under the circumstances.  On April 23, 2010, the Trustees directed defendant, and not Local 302, to promptly furnish the outstanding documents, as well as provide information regarding defendant's payroll registers.  *See* Dkt. 12 at 4 (Hislop Decl.); *id.*, Ex. B.  As a result, defendant has a duty to use his "best efforts" to furnish the outstanding documents and information to Lindquist.

12
13
14
15
16
17
18
19
20

In these proceedings, defendant has made no showing that he has undertaken his "best efforts" to comply with Lindquist's April 23, 2010, request.  Specifically, defendant has failed to subpoena the outstanding documents from his former bookkeeper, or request the Employment Security reports from the state or any other source.  *See* Dkt. 20 at 4.  He has also failed to respond to Lindquist's request for assistance in retrieving acceptable payroll registers for the audit.  *See* Dkt. 12 at 4 (Hislop Decl.).  The Court finds that, at a minimum, the Trust Agreements require this much effort by defendant.  Accordingly, plaintiffs' motion for partial summary judgment is GRANTED.

21
22
23
24
25
26

C.      *Plaintiffs are Entitled to Attorney's Fees and Costs*

Plaintiffs argue that the Court should direct an award of reasonable attorney's fees and costs.  Dkt. 11 at 17-19.  Plaintiffs have offered the declaration of Thomas A. Leahy in support of this request, which indicates that plaintiffs' counsel has incurred attorney's fees and costs in the total amount of $3,520.04.  Dkt. 14 at 1-2 (Leahy Decl.).

1

2

3

ERISA empowers the Court, "in its discretion," to grant "reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). To determine whether an award is appropriate, the Court must consider:

4

5

6

7

8

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

9

10

11

12

13

*Miramar Hotel Corp.,* 920 F.2d at 1495 (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)). The Court need not find that all five factors weigh in favor of the movant in order to direct an award of attorney's fees. *McElwaine v. U.S. West, Inc.,* 176 F.3d 1167, 1173 (9th Cir. 1999).

14

15

16

17

18

19

20

21

22

In this case, the balance of *Hummell* factors tips sharply in favor of granting plaintiffs' motion for attorney's fees and costs. Although both parties suggest that the other is acting in bad faith, there is no specific evidence of such behavior by either party. *See* Dkt. 18 (Gill Aff.); Dkt. 19 (Cushman Aff.); Dkt. 20 at 4. Similarly, although defendant asserts that he is "planning to file for Chapter 13 Bankruptcy" at some time in the future, there is no specific evidence in the record indicating that he has already done so. Dkt. 18 at 3 (Gill Aff.). The third *Hummell* factor is not particularly helpful, as the Court can only speculate as to whether an award in this case would discourage future litigants from asserting the same arguments.

23

24

25

26

The fourth and fifth *Hummell* factors, however, weigh heavily in plaintiffs' favor. Plaintiff Trust Funds requested the audit at issue to ensure that defendant had properly complied with his obligations under the Master Labor Agreement and respective Trust Agreements. Thus, the outstanding documents and payroll register information were requested

ORDER
PAGE - 10

by the Trustees solely for the benefit of the Trust Funds' participants and beneficiaries.

Finally, the strength of the plaintiffs' position on the merits suggests an award of attorney's

fees and costs is appropriate in this case.  Accordingly, plaintiffs' motion for attorney's fees

and costs in the total amount of $3,520.04 is GRANTED.

V.      CONCLUSION

For the reasons discussed above, the Court hereby ORDERS as follows:

(1)     Plaintiffs' motion for partial summary judgment, Dkt. 11, is GRANTED;

(2)     Defendant is directed to submit to the audit within three (3) weeks of the date of this Order;

(3)     Prior to the date of the audit, defendant is directed to use his "best efforts" to furnish the following outstanding documents to the Trustees' authorized representatives by subpoenaing or requesting the documents from multiple sources, if necessary:

    (a)     Washington State Employment Securities Reports for the following quarters:  2007-3; 2007-4; 2008-1; 2008-2; 2008-3; 2008-4; 2010-1;

    (b)     Accounts payable legers (check registers) for 2009 and 2010; and

    (c)     Payroll Registers.

(4)     Defendant is also directed to comply with any reasonable request for information by the Trustees' authorized representatives, including Lindquist's April 23, 2010, request for assistance in retrieving acceptable payroll registers for the audit;

(5)      Plaintiffs' request for attorney's fees and costs in the amount of $3,520.04 is GRANTED; and

(6)     The Clerk is directed to send copies of this Order to counsel for all parties.

DATED this 9th day of August, 2010.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER
PAGE - 11